## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**LINDA S. FLOWERS,**

           **Plaintiff,**

**V.**                                                            **Case No:  6:11-cv-572-Orl-28SPC**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

           **Defendant.**
_____/

## REPORT AND RECOMMENDATION[1]

**TO THE UNITED STATES DISTRICT COURT**

This matter comes before the Court on Plaintiff, Linda S. Flowers' Complaint seeking review of the final decision of the Commissioner of Social Security (Commissioner) denying Plaintiff's claim for supplemental security income (Doc. #1) filed on April 7, 2011.  The Plaintiff filed her Brief in Support of the Complaint (Doc. #20) on September 30, 2011.   The Commissioner filed a Memorandum in Support of the Commissioner's Decision (Doc. #21) on November 14, 2011.  Thus, the Motion is now ripe for review.

The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and administrative record, and the pleadings and memoranda submitted by the parties in this case.

---

[1] This Report and Recommendation addresses only the issues brought up for review by the District Court pursuant to 42 U.S.C. 405(g).

## FACTS

### *Procedural History*

Plaintiff filed an application for Supplemental Security Income (SSI) benefits on May 21, 2007.  (Tr. 53-55).  The Agency denied this application upon initial and reconsideration determinations.  (Tr. 26-27, 39-43, 46-47).  On September 19, 2008, Plaintiff requested a hearing which was held on January 15, 2010 before Administrative Law Judge (ALJ) Joseph A. Rose.  (Tr. 48, 460-95).  On March 10, 2010, the ALJ issued a notice of decision unfavorable.  (Tr. 14-24).  Plaintiff requested review of the hearing decision.  (Tr. 11).  On February 8, 2011, the Appeals Council denied the request for review.  (Tr. 8-10).  Accordingly, the ALJ's decision became the Commissioner's final decision.  The Commissioner's "final decision" is subject to judicial review by this Court.  See 42 U.S.C. §§ 405(g), 1383(c)(3).

### *Plaintiff's History*

Plaintiff was born October 3, 1976.  (Tr. 53).  She completed the tenth grade and has the ability to read, write and speak English.  (Tr. 108, 114).  She has past work experience as both a cashier and a cook.  (Tr. 23).  Plaintiff alleges a disability onset date of June 15, 2003[2] due to high blood pressure, arthritis, and heart problems.  (Tr. 198).

### *Medical History*

On August 31, 2003, Flowers was admitted to Florida Hospital with complaints of chest pain (Tr. 131). She described the pain and intensity as an 8 on a scale from 1 to 10.  Id.  The impression was chest pain and hypertension.  (Tr. 132-33).  It was recommended that a cardiology consult be obtained for possible stress test.  (Tr. 132).

---

[2] The Commissioner's Brief (Doc. #21, pp. 1-2) indicates that Plaintiff alleges a disability onset date of May 21, 2007, but the ALJ's hearing decision, as well as Plaintiff's Brief, indicates that the disability onset date is June 15, 2003.  May 21, 2007, was the date that Plaintiff filed an application for SSI.  The ALJ concluded that the Plaintiff was not under a disability since May 21, 2007, the date the application was filed.

On April 17, 2003, Flowers saw Mark Schellhammer, D.O. for evaluation of an injury to her right thumb. (Tr. 202). She fell at home on April 14, 2003, and dislocated her right thumb at the metacarpal phalangeal joint. Id. Dr. Schellhammer placed Flowers' thumb in a cast and informed her that she would require aggressive therapy. Id.

On September 29, 2006, Flowers was admitted to South Seminole Hospital with complaints of chest pain and was discharged home on September 30, 2006. (Tr. 210, 212). The impression was chest discomfort with atypical components, hypertension, mildly abnormal electrocardiogram, and history of normal left ventricular function by echocardiogram in 2004 at Florida Hospital. (Tr. 213).

On June 19, 2007, Zhengang Yang, M.D., Ph.D., on behalf of the Orange County Community Corrections Intake Unit, opined that Flowers was capable of performing light duties (filing, typing, light custodial duties). (Tr. 249).

On July 25, 2007, Flowers saw Abdul Aziz, M.D. for a rheumatology consultation as recent laboratory work revealed her Rheumatoid Factor was elevated. (Tr. 236-238). Dr. Aziz noted Flowers was suffering from weakness, chest pain, irregular heartbeat, morning stiffness lasting five to ten minutes, muscle tenderness, muscle weakness, joint pain, headaches, dizziness, anxiety, and depression. (Tr. 236).

On August 29, 2007, a non-examining state agency consultant reviewed the record and believed Flowers was capable of performing light work. (Tr. 259). The consultant noted Flowers' symptoms were partially credible based on her medically determinable impairments. (Tr. 263).

On September 7, 2007, Robert M. Bollet, Licensed Psychologist, issued a written Mental Health Evaluation for Flowers. (Tr. 266). She had been seen by his office on July 23, 2007,

August 15, 2007, and August 23, 2007.  Id.  Dr. Bollet opined that Flowers suffered from Histrionic Personality Disorder with Narcissistic Personality Features and Anti-Social Personality Features.  Id.

On September 14, 2007, Flowers returned to Dr. Aziz for a follow-up appointment and noted she felt worse than she did at her previous appointment (Tr. 234). Dr. Aziz noted Flowers was suffering from morning stiffness lasting fifteen minutes; joint pain in her knee, hands, and ankles; fatigue she rated as a 6 on a scale of 1 to 10; pain she rated as a 7 on a scale of 1 to 10; chest pain; headaches; abdominal pain and bloating; dry mouth; and dry eyes.  Id.  Dr. Aziz further noted Flowers had Rheumatoid Arthritis and Sicca symptoms, myalgias, knee crepitus, and osteoarthritis.  (Tr. 235).

On October 11, 2007, a non-examining state agency consultant reviewed the record and believed Flowers was suffering from depression.  (Tr. 270).  He also believed Flowers suffered from a mild restriction of activities of daily living and mild difficulties in maintaining social functioning and maintaining concentration, persistence, or pace.  (Tr. 277).

On August 14, 2008, a non-examining state agency consultant reviewed the record and noted Flowers suffered from a history of depression.  (Tr. 284).  He believed she suffered from a mild restriction of activities of daily living and mild difficulties maintaining concentration, persistence, or pace.  (Tr. 291).

On August 20, 2008, a non-examining state agency consultant reviewed the record and believed Flowers was capable of performing light work.  (Tr. 296).  The consultant noted Flowers does have a medically determinable impairment which would cause her symptoms.  (Tr. 300).

On March 18, 2009, Flowers returned to Dr. Aziz for a follow-up appointment with complaints of pain in her lower back, left hip and left knee.  (Tr. 370).  Dr. Aziz noted Flowers was suffering from Rheumatoid Arthritis, Sjogren's Syndrome, knee crepitus, low back pain, hip pain, and Fibromyalgia Syndrome with increased tender points and further noted she was using high risk medications.  (Tr. 371).

On April 19, 2009, Flowers was admitted to Dr. Phillips Hospital Emergency Room with complaints of left knee pain and right ankle pain after falling in a Publix grocery store.  (Tr. 384-87, 446).   After this incident, Flowers began seeing a chiropractor at Mauricio Chiropractic South, LLC.  (Tr. 442-47).  She went for treatment from May 2009 through October 2009.  Id.

On July 10, 2009, Flowers saw Imtiaz Qureshi, M.D. to establish treatment for her hypertension.  (Tr. 458). Dr. Qureshi diagnosed Ms. Flowers with Benign Hypertension.  (Tr. 459).   On July 30, 2009, Flowers returned to Dr. Qureshi for a follow-up appointment.  (Tr. 456).  He continued his diagnosis of Benign Hypertension.  (Tr. 457).

On September 25, 2009, Flowers returned to Dr. Aziz for a follow-up appointment.  (Tr. 367-69). Dr. Aziz noted Flowers was suffering from Rheumatoid Arthritis and Sicca symptoms, Fibromyalgia Syndrome stable, knee crepitus, osteoarthritis, and further noted she was using high risk medications.  (Tr. 368).  On October 2, 2009, Flowers was admitted to Dr. Phillips Hospital under the care of Dr. Qureshi with complaints of chest pain.  (Tr. 411).

On October 19, 2009, Plaintiff saw Dr. Qureshi for a follow-up visit for her hypertension. (Tr. 449).   Dr. Qureshi diagnosed her with acute pharyngitis, benign hypertension, pain in multiple joint sites, and neurotic depression.  (Tr. 450).  She returned to see Dr. Qureshi on September 9, 2009, for a follow-up visit and he continued his diagnosis of benign hypertension, pain in multiple joint sites and neurotic depression.  (Tr. 455).

On January 8, 2010, Flowers returned to Dr. Aziz for a follow-up appointment with complaints of fatigue and pain in her hands and wrists.  (Tr. 365). Dr. Aziz noted Flowers was suffering from Rheumatoid Arthritis with Sicca symptoms, knee crepitus, and elevated blood pressure.  (Tr. 365-66).

On January 14, 2010, Dr. Qureshi filled out a questionnaire which asked in his opinion whether Flowers' symptoms and limitations were consistent with the medical signs and findings he had observed while treating her.  (Tr. 325).  Dr. Qureshi opined that the following symptoms and limitations were consistent with the medical signs and findings: pain which prevents her from sitting upright in a chair for three hours or more in an eight-hour workday five days a week; pain which prevents her from standing or walking for two hours or more in an eight-hour workday five days a week; joint pain which prevents her from stooping; joint pain which prevents her from bending; the need to lie down at least eight hours daily due to chronic fatigue and joint pain; uncontrolled hypertension despite medication with compliance; frequent headaches; difficulty concentrating for extended periods (less than two hours) due to fatigue and medication side effects; and the inability to perform any job eight hours per day five days per week on a reliable and sustained basis.  Id.  Dr. Qureshi further opined that these impairments and limitations existed since Flowers stopped working in October 2006.  Id.

### Administrative Law Judge's Decision

The Administrative Law Judge Joshua Rose issued his "Notice of Decision – Unfavorable" on March 10, 2010.  (Tr. 17-24).  The ALJ found Plaintiff has severe impairments, namely rheumatoid arthritis; lumbar spine disorder; and right knee disorder.  (Tr. 19, Finding No. 2).  He found that Plaintiff has the residual functional capacity (RFC) to perform light-level work with additional postural limitations and no concentrated exposure to unprotected heights.  (Tr.

20, Finding No. 4).  Based on vocational expert testimony, the ALJ concluded Plaintiff can perform jobs available in significant numbers in the economy, such as office helper and cashier II.  (Tr. 24).  Thus, the ALJ found Plaintiff not disabled.  (Tr. 24, Finding No. 10).

## STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, and whether the findings are supported by substantial evidence. Hibbard v. Comm'r, 2007 WL 4365647 at *2 (M.D. Fla. Dec. 12, 2007) (citing Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988)). In evaluating whether a claimant is disabled, the ALJ must follow the sequential inquiry described in the regulation.[3] (20 C.F.R. §§ 404.1520(a), 404.920(a)). The Commissioner's findings of fact are conclusive if supported by substantial evidence (42 U.S.C. § 405(g)). "Substantial evidence is more than a scintilla − i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion." Hibbard, 2007 WL 4365647 at *2 (citing Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838B39 (11th Cir. 1982))); Richardson, 402 U.S. at 401.

---

[3] The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability. The steps are as follows:

   Step 1. Is the claimant engaged in substantial gainful activity? If the claimant is engaged in such activity, then he or she is not disabled. If not, then the ALJ must move on to the next question.

   Step 2. Does the claimant suffer from a severe impairment? If not, then the claimant is not disabled. If there is a severe impairment, the ALJ moves on to step three.

   Step 3. Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, then the claimant is disabled. If not, the next question must be resolved.

   Step 4. Can the claimant perform his or her former work? If the claimant can perform his or her past relevant work, he or she is not disabled. If not, the ALJ must answer the last question.

   Step 5. Can he or she engage in other work of the sort found in the national economy? If so, then the claimant is not disabled. If the claimant cannot engage in other work, then he or she is disabled. See 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f); see also Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

The Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." Phillips, 357 F.3d at 1240 n.8; Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).

Congress has empowered the District Court to reverse the decision of the Commissioner without remanding the case. 42 U.S.C. § 405(g) (sentence four). The District Court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the District Court with sufficient reasoning to determine that the Commissioner properly applied the law. Williams v. Comm'r, 407 F. Supp. 2d 1297, 1299-1300 (M.D. Fla. 2005) (citing Keeton v. Dep't of Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994)); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).

## DISCUSSION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

twelve months. (42 U.S.C. §§ 416 (I), 423 (d)(1); 20 C.F.R. § 404.1505). The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy. (42 U.S.C. § 423 (d)(2); 20 C.F.R. §§ 404.1505-404.1511). To determine whether the claimant is disabled, the ALJ is required to evaluate the claim according to the established five-step evaluation process.

The Plaintiff sets forth three main issues for which she argues reversal, or in the alternative remand, is proper: (1) the ALJ did not apply the correct legal standard to the opinions of Plaintiff's treating physician, Imtiaz Qureshi, M.D. and the non-examining state consultants; (2) the ALJ failed to apply the correct legal standard to Plaintiff's testimony and subjective statements regarding her pain and limitations and improperly substituted his own opinion for a medical expert's opinion; and (3) the ALJ failed to make findings concerning the side effects of medications that Plaintiff was taking on her ability to work and failed to include these limitations in his RFC assessment. The Court will consider each of these arguments in turn.

1. *Whether the ALJ applied the correct legal standard to the opinions of Plaintiff's treating physician, Imtiaz Qureshi, M.D., and the non-examining state consultants*

On January 14, 2010, Flowers's treating physician, Dr. Qureshi, filled out a questionnaire which asked in his opinion whether Plaintiff's symptoms and limitations were consistent with the medical signs and findings he had observed while treating her. (Tr. 325). Dr. Qureshi opined that the following symptoms and limitations were consistent with the medical signs and findings: pain which prevents her from sitting upright in a chair for three hours or more in an eight-hour workday five days a week; pain which prevents her from standing or walking for two hours or more in an eight-hour workday five days a week; joint pain which prevents her from stooping; joint pain which prevents her from bending; the need to lie down at least eight hours daily due to

9

chronic fatigue and joint pain; uncontrolled hypertension despite medication with compliance; frequent headaches; difficulty concentrating for extended periods (less than two hours) due to fatigue and medication side effects; and the inability to perform any job eight hours per day five days per week on a reliable and sustained basis. Id. Dr. Qureshi further opined that these impairments and limitations existed since Plaintiff stopped working in October 2006. Id. The medical records indicate that Dr. Qureshi began treating Plaintiff in July 2009 (Tr. 458) through at least January 2010. (Tr. 365).

In his decision, the ALJ assigned little weight to the opinion of Dr. Qureshi, stating:

> Regarding the opinion of the claimant's treating physician, Dr. Qurishi *[sic]* that the claimant is unable to work. The undersigned finds this conclusion is inconsistent with the doctor's medical records. There is no objective medical evidence in Dr. Qurishi's records to support his conclusion (Exhibit 16F, 17F, and 19F). For example, in a recent office visit dated October 19, 2009, the examiner's review of the symptoms and objective testing revealed no signs or findings. Cardiovascular, constitutional, neurological, psychiatric, musculoskeletal, and extremity evaluations were all completely normal. Exhibit 17F, submitted by the claimant, noted a consultation report from Dr. Hilal dated July 16, 2009. Dr. Hilal also noted no abnormal musculoskeletal/extremity findings, nor any abnormal neurological findings. Therefore, the undersigned assigns little weight to the opinion of Dr. Qurishi. (Tr. 22).

Plaintiff argues that the ALJ's reasons for assigning Dr. Qureshi's opinion little weight are not "explicit and adequate" as required by Elam v. Railroad Retirement Board, 921 F.2d 1210, 1215 (11th Cir. 1991), and are not based on the correct legal standard.

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. 20 C.F.R. § 404.1527(d); Lewis, 125 F.3d at 1439-41; Sabo v. Commissioner of Social Security, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ

must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence, supports a contrary finding, or is wholly conclusory.  Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991) (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements); Morrison v. Barnhart, 278 F. Supp. 2d 1331, 1334 (M.D. Fla. 2003).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  Schnor v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987); Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based upon: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical issues at issue; (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  20 C.F.R. § 404.1527(d)(2); Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir.1984).  Furthermore, should the ALJ discount the treating physician's opinion he must clearly articulate the reasons for giving less weight to the opinion, and failure to do so is reversible error.  Morrison, 278 F. Supp. 2d at 1334.

The ALJ is required to review all of the medical findings and other evidence that supports a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).  The ALJ is not required to give any special significance to

the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner.  20 C.F.R. § 404.1527(e).

First, Plaintiff argues that the reasons that the ALJ gave Dr. Qureshi's opinion little weight were not explicit because the ALJ failed to state how Dr. Qureshi's opinion is inconsistent with his medical records.  Second, Plaintiff argues that the reasons given by the ALJ are not adequate because the medical evidence is inconsistent with Dr. Qureshi's opinion. Third, Plaintiff argues that the ALJ failed to apply the correct legal standard by requiring objective medical evidence to support Dr. Qureshi's opinion.   The Court recommends that Plaintiff's arguments are unpersuasive.

The Eleventh Circuit has found that a treating physician's report may be discounted when it is not accompanied by objective medical evidence.  See Edwards, 937 F.2d at 583.  Therefore, Plaintiff's argument that the ALJ did not apply the correct legal standard by requiring objective medical evidence to support Dr. Qureshi's opinion is without merit.   In fact, the Plaintiff concedes in her Brief that "Dr. Qureshi did not make any opinions in his treatment records regarding Ms. Flowers's ability to work."  (Doc. #20, p. 9).  Further, the ALJ did in fact state how Dr. Qureshi's opinion is inconsistent with his medical records.  The ALJ noted that:

> There is no objective medical evidence in Dr. Qurishi's records to support his conclusion (Exhibit 16F, 17F, and 19F).  For example, in a recent office visit dated October 19, 2009, the examiner's review of the symptoms and objective testing revealed no signs or findings.  Cardiovascular, constitutional, neurological, psychiatric, musculoskeletal, and extremity evaluations were all completely normal.  Exhibit 17F, submitted by the claimant, noted a consultation report from Dr. Hilal dated July 16, 2009.   Dr. Hilal also noted no abnormal musculoskeletal/extremity findings, nor any abnormal neurological findings. Therefore, the undersigned assigns little weight to the opinion of Dr. Qurishi.  (Tr. 22).

As the ALJ noted, Dr. Talal Hilal, to whom Dr. Qurishi referred Plaintiff for consultation, indicated no abnormal musculoskeletal or neurological findings in his July 16, 2009 report.  (Tr. 22, 328-29).

Plaintiff also takes issue with the fact that the ALJ assigned significant weight to the non-examining state consultants.  The ALJ afforded significant weight to the opinions of Drs. Kim and Patel.  (Tr. 22-23, 259-62, 296-302).  State agency medical consultants, such as Drs. Kim and Patel, are considered experts in the Social Security disability programs and their opinions may be entitled to great weight where they are supported by the evidence.  See 20 C.F.R. § 416.927(f)(2); Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986); see also Schisler v. Sullivan, 3 F.3d 563, 568 (2d Cir. 1993) (noting that the current regulations permit the opinions of non-examining sources to override treating sources' opinions if they are supported by the record).  Upon reviewing the record, these experts opined that Plaintiff can perform light work, with no limitations not reflected in the ALJ's RFC finding.  (Tr. 22-23, 259-62, 296-302).  The ALJ found these experts' opinions reasonable and consistent with the objective medical evidence of record and afforded them weight.  (Tr. 22-23).  SSR 96-6 requires the ALJ to not only consider the program physicians opinions because these physicians are considered experts, but the ALJ must also state, in his decision, the weight he has given to those opinions.  See Wainwright v. Commissioner, 2007 WL 708971 at *2 (11th Cir. Mar. 9, 2007).  Dr. Kim noted in his findings, as the ALJ did, that Plaintiff has good range of motion, no neurological deficits, and paraspinal tender points negative. (Tr. 21-22, 296).

The ALJ may reject any medical opinion if the evidence supports a contrary finding.  Syrock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985).  In this case, the Court recommends that the ALJ was entitled to reject Dr. Qurishi's opinion that Plaintiff could perform no work since

October 2006, when she stopped working, because it was contrary to the opinions and assessments of the state agency physicians who found that Flowers could perform light work. Notably, Dr. Qureshi only began treating Plaintiff in July 2009 (Tr. 458), but he opined that her impairments and limitations existed since Flowers stopped working in October 2006.  (Tr. 325). This leads the Court to believe that Dr. Qureshi's assessment of her ability to work was based on Plaintiff's subjective statements to him rather than based on the objective medical evidence and Dr. Qureshi's own clinical and laboratory findings.   Therefore, the Court recommends that substantial evidence supports the ALJ's finding that Dr. Qureshi's opinion was not based on objective medical evidence in Dr. Qureshi's records as his treatment notes reflect largely normal findings as noted by the ALJ.  (Tr. 22) ("For example, in a recent office visit [to Dr. Qureshi] dated October 19, 2009, the examiner's review of the systems and objective testing revealed no signs or findings.  Cardiovascular, constitutional, neurological, psychiatric, musculoskeletal, and extremity evaluations were all completely normal.").

2.  *Whether the ALJ failed to apply the correct legal standard to Flowers' testimony and subjective statements regarding her pain and limitations and improperly substituted his own opinion for that of the medical expert*

Plaintiff argues that the ALJ did not apply the correct legal standard to Plaintiff's subjective complaints of pain in assessing her credibility.  The ALJ noted that:

> In terms of the claimant's lumbar spine disorder, the claimant complains of chronic low back pain she described as throbbing with radiation into the lower extremities.  She alleges that the pain is so severe that she remains in bed most of the day.  However, the medical evidence fails to show claimant is immobilized by pain or suffers from such severe functional limitations that would preclude her from all work-related activities as is required under the Social Security rules and regulations.  Medical records reveal that the claimant had good range of motion of the hips, no swelling, or tenderness of the ankle joints and only 10 out of 18 tender points.  In addition, there is no evidence of atrophy or weakness in her extremities that would normally accompany an impairment so disabling that would immobilize the claimant (Exhibit 8F, 10F, 11F).

14

> Overall, the undersigned finds that claimant's testimony and subjective statements regarding her pain and limitations credible to the extent of establishing that she has a combination of severe impairments, but not fully credible to the extent of establishing that these impairments are so severe as to preclude her from performing substantial gainful activity as required under Social Security rules and regulations. For example, the record fails to show that the claimant has required frequent period of hospitalizations, frequent emergency room treatment, nor does the record show such a marked diminished range of motion or muscle atrophy as would accompany the alleged disability. Therefore, the undersigned finds that the claimant is not disabled under the Social Security Rules and Regulations. (Tr. 23).

Specifically, Plaintiff argues that it is not correct for the ALJ to require Plaintiff to show that she had frequent periods of hospitalization or frequent emergency room treatment in order for her complaints of pain to be credible. Plaintiff also argues that the ALJ substituted his own opinion for a medical expert's opinion when he noted that the record does not "show such a marked diminished range of motion or muscle atrophy as would accompany the alleged disability." (Tr. 23).

Pain is a non-exertional impairment. Phillips v. Barnhart, 357 F.3d 1232, 1243 n.11 (11th Cir. 2004). Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (*e.g.* medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part pain standard. Foote, 67 F.3d at 1560.

The pain standard requires: (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423 (d)(5)(A).

The Eleventh Circuit has adopted a two-pronged standard for initially examining subjective complaints. First, plaintiff must provide evidence of an underlying medical condition; and second, she must produce objective medical evidence confirming the severity of the alleged pain or evidence that the determined medical condition is of a severity that can reasonably be expected to give rise to the degree of pain alleged. See Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002); Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986).

In this case, the ALJ concluded that Plaintiff's subjective statements concerning her symptoms were not fully credible (Tr. 21). The ALJ explained that the medical evidence failed to show Plaintiff is immobilized by pain or suffers from such severe functional limitations that she cannot perform any work. (Tr. 23). He found that Plaintiff's conservative treatment history and the absence of objective findings supporting her allegations are inconsistent with disability. (Tr. 23). Specifically, the ALJ noted that Plaintiff did not require frequent hospitalizations or emergency room treatment for her alleged debilitating symptoms. (Tr. 22-23). Rather, the ALJ found:

> [t]he claimant underwent conservative medical treatment to relieve her
> back and knee pain including muscle stimulation, moist heat therapy,

> intersegmental hydro-therapy, and chiropractic mobilization techniques.
> Subsequent to this treatment office notes show the claimant's stated that
> her back pain improved and her left knee pain was only intermittent.  In
> addition, she stated that the pain only lasted a couple of seconds.

(Tr. 22, 442-47).  Plaintiff's treatment history is probative of the credibility of her complaints
and was properly considered by the ALJ.  See Wolfe v. Chater, 86 F.3d 1072, 1075 (11th Cir.
1996) (finding that substantial evidence to discredit the claimant's testimony regarding pain
existed where his course of treatment was conservative).

The ALJ also found that the medical evidence, discussed in detail in his decision, did not
support Plaintiff's allegations of disabling limitations.  (Tr. 22-23).  As noted by the ALJ,
treating rheumatologist Dr. Abdul Aziz consistently noted Plaintiff to be in no acute distress,
with good ranges of motion in her hips and shoulders; no swelling or tenderness in her ankle
joints or wrists; no edema or cyanosis in her extremities, and only about 10 out of 18 tender
points.  (Tr. 23, 232-37, 250-57, 365-73).  While treatment notes show Plaintiff had crepitus in
her knees a few times, there was no swelling or tenderness which would normally accompany a
disabling knee disorder.  (Tr. 22, 232-237, 250-57, 365-73).  In addition, Plaintiff reported
morning joint stiffness lasting only 15 minutes or less.  (Tr. 22, 234, 236, 254, 256).  The ALJ
also noted that treating physician Dr. Imtiaz Qureshi's review of Plaintiff's systems and
objective testing revealed essentially "no signs or findings" equating to disabling limitations.
(Tr. 22, 449-59).   Plaintiff's cardiovascular, constitutional, neurological, psychiatric,
musculoskeletal, and extremity evaluations were normal.  (Tr. 22, 449-50, 454-59).  Plaintiff
denied back pain, joint pain, and difficulty walking; she had no deformity or swelling; all of her
joints had normal ranges of motion; and her motor power was normal.  (Tr. 22, 449-50, 454-59).
Moreover, as the ALJ noted, Dr. Talal Hilal, to whom Dr. Qureshi referred Plaintiff for

consultation, indicated no abnormal musculoskeletal or neurological findings in his July 16, 2009 report.  (Tr. 22, 328-29).

Plaintiff further argues that the ALJ improperly substituted his own opinion for a medical expert's opinion when he noted that the record did not "show such a marked diminished range of motion or muscle atrophy as would accompany the alleged disability."  (Tr. 23).   Defendant notes that it is proper for the ALJ to consider the medical evidence, including medical signs and findings, and draw conclusions from it to determine a claimant's RFC.  See 20 C.F.R. §§ 416.929(c)(2); 416.945(a)(1),(3), 416.946(c); Social Security Ruling (SSR) 96-8p, at *5.  The Court agrees with Defendant's argument on this point. The ALJ's statements regarding the diminished range of motion and muscle atrophy cited by the Plaintiff were supported by medical evidence that he cited in his opinion, namely:

> Office visit notes show that claimant experienced crepitus in her right knee joint on several occasions; however, there was no swelling or tenderness which would normally accompany a disabling knee disorder.  In addition, she had good range of motion and no gait abnormalities (Exhibit 10F).  . . . Dr. Yang noted that the claimant experienced morning stiffness in her joints, yet her stiffness only lasted for approximately 15 minutes and she continued to have good range of motion with her knees, back, elbows, hips, and shoulders (Exhibit 8F).  (Tr. 22).

Thus, the ALJ's notation that the record did not "show such a marked diminished range of motion or muscle atrophy as would accompany the alleged disability" (Tr. 23) was supported by the medical evidence cited in the ALJ's opinion, and was not the ALJ substituting his opinion for that of a medical expert, as alleged by the Plaintiff.

Therefore, based on the above the undersigned recommends that the ALJ's findings regarding Plaintiff's subjective complaints of pain are supported by substantial evidence.  The ALJ examined the medical evidence and found that the objective medical evidence did not confirm the severity of Plaintiff's alleged pain.

*3.   Whether the ALJ failed to make findings concerning the side effects of medications that Plaintiff was taking on her ability to work and failed to include these limitations in the RFC assessment*

In his decision, the ALJ noted that Flowers experiences side effects such as dizziness and headaches from her medications.  (Tr. 21).  The Plaintiff argues though that the ALJ failed to make findings regarding the side effects on Flowers's ability to work on a reliable and sustained basis eight hours a day, five days a week as required by Cowart v. Schweiker, 662 F.2d 731, 737 (11th Cir. 1981) (stating that it is conceivable that "the side effects of medication could render a claimant disabled or at least contribute to a disability").

In determining whether a claimant's impairments limit her ability to work, the ALJ considers the claimant's subjective symptoms, which includes the effectiveness and side effects of any medications taken for those symptoms. 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv).  In this case, Plaintiff testified that she suffers side effects such as dizziness and drowsiness from her medications, which she told her doctors about. (Tr. 480).  The ALJ did not inquire any further into these statements.  She further testified that her medications cause shortness of breath and low energy.  (Tr. 484-86).   The record also shows that Dr.  Quershi indicated that Plaintiff has difficulty concentrating for extended periods (less than two hours) due to fatigue and medication side effects.  (Tr. 325).  Plaintiff submitted pharmacy information sheets to the ALJ on which Plaintiff underlined the side effects she experienced from her medication, which include: stomach upset, drowsiness, tiredness, dizziness, lightheadedness, fatigue, dry mouth, and loss of appetite.  (Tr. 316-22).  Other areas of the record also indicate that Plaintiff complained of side effects such as dizziness and tiredness from her medications. (Tr. 83, 73, 97, 103).  Because of the severity of the fatigue, Plaintiff indicated that she is barely able to get out of bed.  (Tr. 73).

The only mention of side effects in the ALJ's opinions was when he noted that Plaintiff testified that she experienced side effects from her medication such as dizziness and headaches. (Tr. 21).   He did not indicate whether her fatigue and dizziness would preclude her from working.   Further, the hypothetical posed to the VE in this case did not instruct the VE to consider the side effects of medications as reported by the Plaintiff.   Thus, the ALJ did not consider how these side effects affect Plaintiff's ability to work or otherwise would affect her RFC.   Whether the ALJ discounted Plaintiff's complaints as they relate to medication side effects in his credibility analysis is not entirely clear.   Thus, the undersigned recommends that the ALJ erred in not indicating whether side effects affect Plaintiff's ability to work.   As the Court does not want to speculate, it recommends that this matter be remanded on this issue. "Where an ALJ decides not to credit a claimant's testimony about symptoms, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding."  Kelly v. Commissioner of Social Security, No. 6:08-cv-1751-Orl-JA-DAB, 2010 WL 581771, * (M.D. Fla. Feb. 18, 2010) (citing Jones v. Dep't of Health and Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence)).   "Since Claimant raised the issue of the side effects of his medication, the ALJ should have more fully developed the record on the issue."  Sierka v. Commissioner of Social Security, No. 6:08-cv-1073-Orl-JA-GJK , 2009 WL 2160523, * (M.D. Fla. July 17, 2009) (citing Cowart v. Schweiker, 662 F.2d 731, 737 (11th Cir. 1981); Figueroa v. Secretary of HEW, 585 F.2d 551, 554 (1st Cir. 1978; Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997)).

Accordingly, it is now

**RESPECTFULLY RECOMMENDED:**

This matter be **REVERSED and REMANDED** to the Commissioner for reconsideration of Plaintiff's RFC, specifically a determination whether the side effects of Plaintiff's medications affect Plaintiff's RFC.

Failure to file written objections to the proposed findings and recommendations contained in this report within **seven (7) days** from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Respectfully recommended** at Fort Myers, Florida, this 28th day of August, 2012.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies:  All Parties of Record